Good morning, Your Honors. May it please the Court, my name is Edith. Counsel, would you just stand by for a moment and let your opposing counsel and co-counsel get settled. I'm seeing my time passing, so I was in a hurry to get started. Now it's frozen, so not to worry. Thank you. Counsel, you may proceed.  And good morning, Your Honors. May it please the Court. My name is Edith Binet. I'm here representing all six appellants in the Zolotarev and Skorotofsky matter, as well as the Glassman et al matter. These are six individuals who applied for jobs as mechanics in the San Francisco Municipal Railway, better known as MUNI, in 2000. Skorotofsky and Zolotarev first brought an action in connection with several other continuing employees at MUNI, in which they all alleged that MUNI discriminated against them on the basis of preferential treatment of Asian and Filipino employees and applicants. Zolotarev and Skorotofsky moved for class certification. The Court denied certification on the ground that there was insufficient numerosity, but ordered that letters be sent to all putative class members informing them of the existence of this case, of the allegation of preferential treatment of Asian and Filipino applicants, and of the responding applicants are in the Glassman case. Counsel, I think we have a pretty good idea of the factual background. I think the first question you might help us with is whether it was proper to hold that the statute of limitations began to run when the Petitioners or plaintiffs received the notice that they were not hired, or is there some other way we need to approach this? Your Honor, that raises an issue of accrual. It's a California statute of limitations which applies to new applicants for hire under 42 U.S.C. 1981, but the Federal doctrine of accrual applies. And the district court erred in relying on Delaware v. Ricks, a 1980 decision which held that once the plaintiff is aware of the adverse employment action, the statute of limitations begins to run. Ricks did not address a situation in which the plaintiff was not aware of the unlawful discriminatory practices behind that adverse employment action. Tell us in a sentence or two how you would write the rule for the, in circumstances like this, for the onset of the statute, the trigger period. How would you describe what would the rule be? Actually, Your Honor, if I had to put it in a sentence or two, I would take it straight from Biggs v. Wilson, which described the Aronson v. Crown-Zellerbach case as saying that the statute of limitations runs from the day the employee should know that the employer violated the law. That is how Biggs v. Wilson describes Aronson v. Crown-Zellerbach, and that is the way Aronson v. Crown-Zellerbach held just three years after the Ricks decision. Ricks is limited because it does not address a situation where the employee was not aware of the discrimination. And I would go on, Your Honor, to follow the dicta in Lyons v. the name of that case, just Lyons v. England. It's not exactly dicta, but in a footnote, in Lyons v. England, the Ninth Circuit distinguished the decision in Abramowitz v. University of Hawaii, which is a case that was cited in Ricks. And in that case, the Lyons court says that while – I'm sorry, it's Abramson, not Abramowitz. Abramson drew a sharp line between the act and any injury it causes, meaning the consequences of the adverse employment action do not start the statute of limitations. So the – if you were writing the rule, the rule would read something like the statute of limitations for the purposes of cases like this begins to run when the former employee knew or should have known of the employer's wrongful act? Yes, of the employer's unlawful discriminatory conduct. Doesn't that mean that there would be no statute of limitations at all? No, Your Honor, that's not accurate, because many times employees are aware that when they suffer adverse employment actions, there is discriminatory motive behind it. For instance, in the Olson case, which was not exactly an employment situation, but it did address a medical board, in that case, the plaintiff, Olson, was well aware that the – she was – or believed that her license was being taken away for discriminatory reasons. So if an employee, like your clients, is discharged and given a facially neutral, non-discriminatory reason for the discharge, and 20 years later finds out that there may have been discrimination, it would be okay to sue? Your Honor, it's not okay to sue if there was reason for the person to have known or suspected that there was discrimination. My question assumes that this employee accepted the explanation when given, went on about her life, and 20 years later found out that discrimination may have been involved in her termination. Would you allow that suit? Technically, yes, I would, Your Honor, because if it's being brought under 1981, 42 U.S.C. 1981, there is no stated requirement that administrative procedures be followed within a certain period of time after the adverse employment action. Isn't the solution to Judge Hawkins' question is to really begin to distinguish between the running of the statute of limitations and the application of equitable tolling? So, in other words, most of the circuits that have looked at this distinguish between legal and actual injury, and the termination or the failure to get a job or whatever that conduct is, that triggers the statute of limitations. But that would mean that there may be circumstances, depending on, you know, the other thing, that would kick in equitable tolling. But virtually all the cases that have looked at this at other circuits, and I don't think we've quite looked at it, would start the statute of limitations when the failure to hire or the termination begins. And that you haven't really given us a good reason why we should go against all those circuits. Your Honor, those circuits have dealt with equitable tolling under the Federal rule of equitable tolling. Those circuits, particularly those cases cited by the defendants in their briefs, deal with Title VII, which has an administrative procedure where – which requires that an administrative complaint be brought within a certain amount of time after the adverse employment action. And the purpose of the EEOC, the administrative body, is to do the investigation. In the Ninth Circuit, as in Lyons v. England or in Aronson v. Crown-Zellerbach, the Court has not limited the time passing to equitable tolling. And, in fact, if it did, it would exclude everyone in California, because under 1981, and I'm just talking about 42 U.S.C. 1981, which does not have an administrative procedure, we would – we are limited to equitable tolling under California law. And equitable tolling under California law does not rely on whether there has been misrepresentation or fraud or some reason for the plaintiff to have been unaware of the discriminatory conduct. It requires that a previous action be brought. And while that action is pending, a statute of limitations is being told. In a circumstance facing the plaintiffs in this case, where they did not know until just about four years after the events, that, in fact, the – the defendant was promoting unqualified Asian and Filipino applicants who did not meet the minimum qualifications, was not promoting them but hiring them for the position instead of the qualified applicants such as the plaintiffs, equitable tolling would not apply, because California's equitable tolling statute or doctrine does not apply in this kind of circumstance. It's a question of when does the statute of limitations begin. And if there was no opportunity for the plaintiffs to know of the unlawful conduct, then their statute does not begin to run. And this is something that the Ninth Circuit has recognized and held in other Federal civil rights circumstances, for instance, under 42 U.S.C. 1983. In the Kines case, the plaintiff brought an action for a violation of 42 U.S.C. 1983 several years after he suffered the consequences of an adverse ruling by the court. His position was that there was an unlawful conspiracy between that judge and some of the other attorneys involved in the case. The adverse action occurred several years before he brought his action. He did not learn about the unlawful conspiracy until several years later. And the court in the Ninth Circuit recognized that his statute of limitations did not begin to run until he learned of the or had reason to suspect the existence of that unlawful conspiracy. Kagan. Kagan. That's Kines v. Stone, 84 F. 3rd, 1121. Similarly, in another 1983 action, Morales v. Los Angeles, the Ninth Circuit panel quoted from a Second Circuit decision, Veal v. Garcia, 23 F. 3rd, 722. This, again, was not an employment action, but it addressed treatment of a prisoner. And they quoted from the Second Circuit decision saying, rather, the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of both the harm and the cause of the harm. Kimes and the case you just cited, are they in your brief? Yes, they are, Your Honor. Your Honor, I would like to reserve an extra few minutes for rebuttal. So unless you have more questions about the accrual issue, I would just like to state that there is also the issue of equitable estoppel, which under California law, because I would consider equitable estoppel to be a tolling doctrine, under California law, a misrepresentation of fact by the defendant is sufficient to toll the statute of limitations if it causes the plaintiff to sleep on their rights. In this case, the misrepresented fact was that Muni does not hire anyone who does not meet the minimum qualifications for the job. In fact, they hired several people on a racial basis who did not meet the minimum qualifications and passed over the plaintiffs in this case. And I will reserve the remainder of my time unless you have any questions about that. No, that's fine, counsel. You may do so. We'll hear from the city. Good morning, Your Honors. My name is Jonathan Rolnick. I'm a deputy city attorney. I am representing the city and county of San Francisco, as well as the individual defendants in both of these cases that are being heard this morning. Mr. Rolnick. This case presents a simple application of straightforward and objective rules set forth in Delaware State v. Ricks regarding the accrual of claims in employment discrimination cases. The rule holds that a claim of discrimination in hiring accrues at the time the hiring decision is made and communicated to the plaintiff. At that time, the plaintiff knows of his injury, he's not getting a job, and the plaintiff also knows the cause of that injury, and the cause is the decision that's been communicated by the putative employer. So what's the employee to do in a circumstance like this to protect against the application or invocation of that rule should we adopt it? The employee is discharged. The employee is she is given a completely neutral, nondiscriminatory reason. We don't hire people who don't have three years or two years of experience at this kind of work, and thank you very much. We'll see you later. It turns out that they're doing that, hypothetically, for my purposes of my question. What's the employee supposed to do? The employee is supposed to exercise due diligence, Your Honor. What does that consist of? Well, that may consist of a variety of different things. I would think it would start with perhaps a phone call or a letter to the employer asking for further information. So you would have every employee in that situation, when they receive a nondiscriminatory, neutral reason for discharge, communicate with the employer and ask, ask what? Send them a set of interrogatories? Well, they may ask them a question to, for example, in this case, Mr. Skiratovsky was rejected because his application was incomplete. He did not provide verification of his employment. He certainly could have written back or called back and inquired about what exactly he was required to provide under the circumstances. What if it turned out that the next day they hired someone in exactly his circumstance? I'm sorry. What if they? The applicant applies. They're told you didn't fill out question 19 and 20 on the employment application form. We can't hire you. Thank you. Have a wonderful day. The next day they hire someone in exactly that circumstance who's left exactly those questions blank, but they kind of like this person, so they hire them. Well, that may. The employee that was rejected knows nothing about this. Well, that may be evidence that might lead that employee, if he learns of it, to believe that there's something other afoot than the explanations provided by the employer. How do they learn about it? They have to learn about that by making inquiries. I guess I'm back to my question. Is counsel that represents people in this circumstance draft up a set of pattern interrogatories to be attached to a letter every time they're turned down for a job? You know, each employee is going to respond differently, Your Honor, but the city receives, as do employers all over the country, demand letters and inquiries from individuals who've applied for a job as well as individuals who retained an attorney asking for an explanation regarding a particular employment action. Okay. So here's the interrogatory sent in a nice letter. Employee not hired. Others, let's see, in this case, ranked above employee. And he writes and says, you know, why didn't I get the job? Others were ranked above you. Okay. Five years go by, and then he finds out, well, wait a second, they really weren't ranked above me, but now he's out. He asked. They said, no, here's others ranked above, which was true. There were others that ranked above, but absent some statistical analysis or actual total disclosure on the part of the employer, you wouldn't know anything. That may be true. He may have other avenues for investigating. And let me give you a different example. What would those be? Hire an investigator and then the employer has no obligation at that point, do they? That's true, Your Honor. With respect to the city in particular, an employee can make a public records request under California law or under the San Francisco Sunshine Ordinance. And one of the requirements under the San Francisco Sunshine Ordinance is where there's a request for information, demographic information about applicants and hires for a particular position that the city is required to provide that information to a requester, and there are very tight time frames for requesting that information. So with respect to the city, there is, in fact, a means by which to, in essence, ask that interrogatory or ask for a request for production of documents, so to speak. It's a public records request under the local ordinance or under California State law. Why wouldn't it be a new or should have known, and then if there were reasonable avenues that one might have pursued, which could vary from case to case, the should have known would kick in? Well, because it cuts against the purpose of the statute of limitations, which is to encourage parties to pursue claims while they are fresh, the evidence is fresh in everyone's mind, and to provide protection for employers or other defendants in different kinds of cases from having to defend against stale claims. In this case, these are the reasons why it's not a new or should have known. Wouldn't the should have known speak precisely to that issue? In other words, it can't go on forever. If there is a should have known period or a reasonable period in which one should have figured it out, then that cuts off the statute of limitations. Well, I think it's should have known. The should have known is the should have known of the injury, of the decision that's caused the injury, whether it's a denial of a promotion or the denial of a position. I believe that that's what the cases speak of. It's the new or should have known of the injury. And when you look at the other cases that have been decided, where the courts often are wrestling with the issue is when the plaintiff should have known of the injury. For example, in Delaware State v. Ricks, the question was whether the accrual occurred when the State University said to Mr. Ricks, we are going to deny you tenure or, in Mr. Ricks' view, did it accrue a year later when his one-year terminal contract expired. And the Court said it happened when the denial of tenure was given, that he knew or should have known that that was the injury and that's when it occurred, because in fact that's what he was challenging in his lawsuit. He was not challenging that his one-year contract that he signed had expired. He was challenging the fact that he had been denied tenure. I asked your opponent how she would write the rule. How would you write the rule? I would write the rule as it's set forth in Ricks, is that the accrual starts, the statute of limitations begins to run when the plaintiff is – suffers the injury and knows the cause of the injury. He knows – he knew or should have known of the injury and of the moving force behind that injury. So when the employee is told you're not hired or you're terminated or you're not promoted, that starts the statute? Exactly. Whether the employer hid the information, lied about the information, accepted the bribes to promote some friend or something like that, those don't count. Those come to different factors. Then we talk about, I believe, which was discussed earlier with Ms. Bonet, of whether there are equitable tolling principles that come into play or equitable estoppel issues that come into play. Equitable tolling would be a situation where a plaintiff, but for, you know, has exercised due diligence but has been unable to acquire the additional information he or she needs to pursue their claims. Equitable estoppel would come into play if there was some particular misrepresentation by the employer that duped the potential plaintiff into not suing within the statutory time frame. Those would be different issues. Let's assume for the purpose of the question I'm going to ask that these plaintiffs can't establish, you can't establish, that they knew of the actual discriminatory alleged practices, okay? Okay. So we're down to should have known. What, if that were the standard, how would it apply to these facts? It would apply to these facts in that these people all applied for jobs in late 2000. I'm not asking for the time clock. I guess what I'm asking is, is there any evidence that suggests they should have known? That they should have known that the real reason, that the reason that was articulated for their not being hired was, in fact, not correct. I can speak with respect to Mr. Skowrotowski. With respect to the others, the only information they obtained after they applied for the position was a communication from the city that they would not be hired, and they took no further action. Mr. Skowrotowski, in contrast, had applied for this same position over a series of years as there were different job announcements for it. When he first – and I apologize, I don't have the dates absolutely clear here – but when he first applied for the job in early 2000, he applied for what in the city's civil service system is called a provisional position rather than a permanent civil service. He submitted essentially the same application as he presented later in the year, the failure to hire that's at issue here, identical application, and, in fact, in both cases he did not provide the verification. But the first time he applied for the provisional job, he was actually – took an exam of sorts and sat for an interview with some muni managers to test out his knowledge, skills, and ability for the job and was put on a provisional list for potentially being hired. Everyone above him on the list was hired. When he applied the second time, again, the exact same application, but this time for a permanent position, he was told, oh, you didn't provide verification. He should have known at that point in time, something's wrong here. Last time I applied and they let me go through this process and at least I was in the group of people being considered. This time I'm not. Roberts, you're – what you're saying is that if should have known were the rule applied to the – there would be various applications of these – these individual plaintiffs. Some you might be able – the city might be able to establish as to some of them that they should have known, but there may be some of them that you might have some trouble in that regard. Yes, but I – Is that right? I think the way you're – you're framing it, but I think in – in the city's view – I mean, you've given a good example, it seems to me, of something that might qualify for should have known. Comes up the first time, presents an application, nothing is said about employment verification, doesn't get the job. Comes up the second time, same essential application, no employment verification, and that's cited as reason. That arguably might be a situation of should have known. You're – you're correct, Your Honor, but I think if you look at the case law, the knew or should have known addresses the issue of whether they knew or should have known of the injury, whether they knew or should have known that they didn't get the job. What I believe you're addressing is after that point and once the statute runs, whether or not there's some equitable principle that will either toll the statute of limitations for some period of time, or once the statute has run, provides them some equitable estoppel against the city asserting the affirmative defense in which respect – Well, let me – let me give you a different example that would fit into your construct. The supervisor observes people and he thinks about this one guy, you know, he just seems to hang out with all the Asians, he's not mixing that well with the other people, he just seems to be so Asian-centric in my company. Then comes time for salary readjustments, not a promotion, but discretionary salary readjustments, and the guy says, you know, and there's not the kind of things that you normally have to disclose to the employees anything about, but you say, look, I've looked at your performance, I've looked at everything, and I'm going to give you, you know, $2 an hour raise. And the guy thinks, you know, I thought I might get more, but I got $2 an hour. Four years, five years go by, and then somebody else sues on some issue of racial discrimination, and out comes this information. Would he be foreclosed from bringing his suit? Because he knew that he didn't get $3 an hour raise, he only got $2 an hour raise. Now, he doesn't know the reason, of course, any more than most people know the reason as to why they didn't get hired or why they got demoted. Your Honor, the way you proposed it, I would say yes. I mean, if he has a suspicion at the time, if he's observed. There's no suspicion. I mean, the guy says, look, I evaluate it, it's discretionary as to how much we give you, circumstances of the company, you know, I'm going to give you $2 an hour. I mean, why should he know anything? I apologize for the use of suspicion. He has reason to draw some inference, because he knows that the supervisor who's doling out these raises to folks is, in your hypothetical, he's observed him in the workplace and finds him hanging with those who are like him. Ginsburg. But instead he says, did you not give me a raise because I'm Asian? Does he have to say that? Is that what he has to say? Well, I don't think he has to say that. That would put him on notice that it's time to – that the claim has accrued under those circumstances. I would just say, back to this reasonably should have known. I mean, you know, the real problem with this is in cases of race discrimination, particularly, is that there's no real way to know that for the employee. Well, but that's always the case in employment discrimination. But it comes out sometimes. But at that moment, policy-wise and sort of your policy is you don't want this to go on forever, but it basically, every single raise, every single review, every single hiring decision puts the, in your view, would really put the employee in contraposition to the employer, wondering if there isn't some racial reason. If I'm white, maybe I didn't get promoted. If I'm black, I didn't get promoted. And everything you'd have to be like in an interrogative situation with your employer in order to meet your criteria, wouldn't you? Well, and I see that time is up. I just want to have one response to that, and I think it also addresses Judge Hawkins' concern. This reasonably should have known, again, I believe, goes to this, in this area of equitable tolling. The claim is accrued. But I think what's implicit there is some due diligence on the part of the putative plaintiff. And if you look at the record in the case, none of these plaintiffs exercised any diligence in inquiring about the nature of their claims. In fact, the Glassman plaintiffs waited five years, and the only reason they filed a lawsuit is because they got a letter from Ms. Binet after the class certification motion was denied. They were denied the job. Most of them were, all of them, I believe, were MUNI employees who worked at MUNI in maintenance, and they did nothing until five years later when they got this letter. Thank you, counsel. Your time has expired. Ms. Binet, you have some reserve time. Thank you, Your Honors. First of all, I'd like to address the issue of knew or should have known. That's a question of fact. That's a question of fact that was not reached in the 12b motion on the Glassman case, nor was it reached on the motion for summary judgment on the Zolotarov and Skowrotowski case. The district court said when you are told you're not hired, clock starts. Yes, exactly. And that's all the motion for summary judgment addressed. With respect to your hypothetical, Judge Hawkins, about they lost their applications were disqualified because they did not submit the verification of employment, and then later someone was hired without the verification of employment. That is exactly what happened in this situation. Several of the appellants in this case had their applications for permanent positions rejected because they did not submit written verification of their previous qualifying experience. They were told when their applications were rejected that there was no appeal process. They were not told that subsequently the requirements for the job were changed and the new announcement omitted the requirement for written verification of prior experience. Could an employee who didn't receive a job and told that you didn't get the job because you didn't provide employment verification find out about the contents of the employment  Technically, under civil service rules, there is an ambiguous clause which might allow an employee to see the applications of other applicants. However, when, and I am referring for the moment to 000332 in the Skorotofsky and Zolotarov excerpt of the record, employees were not informed of that. They were in fact informed that they could look at their own applications, but they were not informed that they could look at applications of other employees or other applicants. And the civil service provision is itself ambiguous. It's possible that these people could have found out what was going on if they had really investigated closely, but in O'Connor versus Boeing, if you don't have a reason to suspect racial discrimination or some other improper motive, then you're not expected to exercise diligence in discovering the improper motive. They had no reason to suspect that unqualified Asians and Filipinos were being hired instead of them. The city was representing that only the people who met the minimum qualifications for the job would even be considered. And yet unqualified applicants were considered, were hired as provisionals and as permanent employees, and at various times the rules changed. I take it when you refer to Asians and Filipinos, you mean Asian Americans and Filipino Americans. They may or may not have been American citizens at that point. I am referring to Asians and Filipinos, some of whom had just arrived in the United States, some of whom may or may not have been citizens. Thank you, counsel. Your time has expired.
judges: O'scannlain, Hawkins, McKeown